UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 20-24391-CIV-LENARD

**YEMINA MARINO, individually and on
behalf of others similarly situated,**

    Plaintiff,

**v.**

**SPIZZIGO ENTERPRISES, L.L.C.,
LANGOLO 107 INTESTMENTS LLC,
and SALVATORE DOMANTI,**

    Defendants.
_____/

<u>**ORDER GRANTING IN PART DEFENDANTS' MOTION TO DISMISS
PLAINTIFF'S COMPLAINT OR, ALTERNATIVELY, MOTION FOR MORE
DEFINITE STATEMENT (D.E. 10)**</u>

**THIS CAUSE** is before the Court on Defendants Spizzigo Enterprises, L.L.C., Langolo 107 Investments LLC, and Salvatore Domanti's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for More Definite Statement, ("Motion," D.E. 10), filed November 20, 2020. Plaintiff Yemina Marino filed a Response on December 4, 2020, ("Response," D.E. 12), to which Defendants did not reply. Upon review of the Motion, Response, and the record, the Court finds as follows.

## I.   Background[1]

Plaintiff worked at as a wait-staff worker at restaurants called "Spizzigo," "Gusto RistoBar," and "La Griglia" from December 2014 through September 2020. (Compl. ¶ 5.) Defendants Spizzigo Enterprises, L.L.C. ("Spizzigo") and Langolo 107 Investments LLC ("Langolo") jointly operate these restaurants. (Compl. ¶ 3.) Defendant Salvatore Domanti owns and/or controls both Spizzigo and Langolo. (Id.)

On October 26, 2020, Plaintiff initiated this lawsuit alleging unpaid minimum wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 206, (Count I), unpaid overtime wages in violation of the FLSA, 29 U.S.C. § 207, (Count II), and "breach of agreement to pay wages" and for "unpaid wages" in violation of the Florida Minimum Wage Act ("FMWA"), Fla. Stat. § 448.110, and Section 24, Article X of the Florida Constitution (Count III).

Defendants move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the Complaint for failure to state a claim upon which relief can be granted, or, in the alternative, under Rule 12(e) for a more definite statement. (D.E. 10.)

Additional background information will be provided where necessary to the Court's analysis.

---

[1] The following allegations are gleaned from Plaintiff's Complaint, (D.E. 1), and are deemed to be true for purposes of ruling on Defendants' Motion to Dismiss.

## II. Legal Standards

### a. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 8(a)(2), "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief[.]" "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1).

Under Rule 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Conclusory statements, assertions or labels will not survive a 12(b)(6) motion to dismiss. Id. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Edwards v. Prime, Inc., 602 F.3d 1276, 1291 (11th Cir. 2010) (setting forth the plausibility standard). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555 (citation omitted). Additionally:

> Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (noting "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions"). In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in Plaintiff's favor, "but we are not required to draw plaintiff's inference." Aldana v. Del Monte Fresh Produce, N.A., Inc., 416 F.3d 1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for

the purpose of testing the sufficiency of plaintiff's allegations. Id.; see also Iqbal, 129 S. Ct. at 1951 (stating conclusory allegations are "not entitled to be assumed true").

Sinaltrainal v. Coca-Cola, 578 F.3d 1252, 1260 (11th Cir. 2009), abrogated on other grounds by Mohamad v. Palestinian Auth., 566 U.S. 449, 453 n.2 (2012). The Eleventh Circuit has endorsed "a 'two-pronged approach' in applying these principles: 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" Am. Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 679).

    **b.**    **Rule 12(e)**

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R. Civ. P. 12(e). "Federal courts disfavor motions for more definite statement, in the light of the liberal pleading and discovery requirements." Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313, 1322 (S.D. Fla. 2004) (quotation marks and citation omitted).

**III.**    **Discussion**

Defendants argue that the Complaint should be dismissed: (1) as an improper "shotgun" pleading, (Mot. at 6-8); (2) because it fails to properly allege FLSA coverage, (id. at 8-9); and (3) because it contains vague and contradictory allegations, (id. at 9-10). They further argue that the Complaint should be dismissed as to Domanti because it fails

to allege he had operational control over the restaurants. (Id. at 10-11.) Finally, they argue that Count III is preempted by the FLSA. (Id. at 12-13.)[2]

For the reasons that follow, the Court finds that although (a) the Complaint plausibly alleges enterprise coverage under the FLSA, (b) the Complaint fails to plausibly allege that Domanti had operational control over the restaurants, (c) Counts I and II contain contradictory allegations which fail to state claims that are plausible on their face, and (d) Count III is an impermissible shotgun pleading.

### a.     FLSA coverage

Defendants argue that the Complaint fails to properly allege FLSA coverage. (Mot. at 8-9.) Specifically, they argue that "Plaintiff fails to allege any facts to support the existence of enterprise coverage in this case and, instead, relies on formulaic recitations." (Id. at 8.) Plaintiff argues that the Complaint alleges both enterprise and individual coverage. (Resp. at 5.)

In order for the FLSA's overtime and minimum wage provisions to apply, "an employee must first demonstrate that [s]he is 'covered' by the FLSA." Josendis v. Wall to Wall Residence Repairs, Inc., 662 F.3d 1292, 1298 (11th Cir.2011) (citing 29 U.S.C. § 207(a)); see also 29 U.S.C. § 206(a). This requires a showing that the jurisdictional

---

[2] Defendants further argue that Count III should be dismissed because Plaintiff failed to provide Defendants with pre-suit notice pursuant to Section 448.110(6)(a), Florida Statutes. (Id. at 11-12.) On January 19, 2021, the Court issued an Order requiring Plaintiff to indicate whether she had complied with the FMWA's pre-suit notice requirement. (D.E. 18.) On January 22, 2021, Plaintiff filed a Verified Response indicating that she had complied with the FMWA's pre-suit notice requirement. (D.E. 19.) On January 25, 2021, Defendants filed a Reply in which they appear to accept Plaintiff's averment that she complied with the pre-suit notice requirement and withdraw the argument contained in their Motion to Dismiss that asserted otherwise. (D.E. 20.)

prerequisite of "interstate commerce" exists in a given case, a showing that may be made one of two ways. Id. First, an employee may claim "individual coverage" if she regularly and directly participates in the actual movement of things or persons in interstate commerce. Id. Second, an employee may assert "enterprise coverage" if her employer: (1) has employees engaged in interstate commerce or in the production of goods for interstate commerce, or employees who handle, sell, or otherwise work on goods or materials that have been moved in, or produced for, interstate commerce by any person; and (2) has gross volume sales or business of at least $500,000 annually. Id.

    Here, the Complaint alleges that

> Defendant Spizzigo Enterprises, L.L.C., and Defendant L'angolo 107 Investments LLC are related Florida limited liability companies which together operate at least three restaurants and bars in South Florida as a single jointly organized conglomerate using the same or similar names. See https://www.spizzigo.com. Both entities are owned and/or controlled, directly or indirectly by Defendant Salvatore Domanti.

(Compl. ¶ 3.) The Complaint further alleges "Plaintiff worked as a wait-staff worker at all three restaurants operated by the Defendants in Miami-Dade County from approximately December 2014 through September, 2020." (Id. ¶ 5.) It further alleges that

> Defendants Spizzigo Enterprises, L.L.C., L'angolo 107 Investments LLC, and Salvatore Domanti are each, individually, and together as group, a "person" and "employer" within the meanings provided by 29 U.S.C. §203(a) and (d). Defendants are referred to herein jointly as "Employer". Moreover, this same "Employer", individually and together as a group, which includes the various related restaurants and venues which it operates, is an enterprise engaged in commerce within the meaning of 29 U.S.C. §203(r) and (s). Further, in the course of employment with this Employer, Plaintiff Marino, and all of those similarly situated persons who may hereinafter opt-in to this lawsuit, was and were individually engaged in commerce because they were employed in a manner which required that they regularly use the implements of interstate commerce and directly interacted

> and served customers of the restaurants who traveled from other states and countries, and also by nature of the work Plaintiff performed. Upon information and belief, the annual gross revenue of the Employer was at all times material to this action in excess of $500,000.00 per annum.

(Id. ¶ 6.)  Finally, it alleges that "[b]y reason of the foregoing, the Employer is, and at all times material to this action was, an enterprise engaged in commerce or in the production of goods for commerce as defined in Sections 3(r) and 3(s) of the FLSA, 29 U.S.C., Sections 203(r) and 203(s)."  (Id. ¶ 7.)

### 1. Individual coverage

For individual coverage, "[a]n employee is engaged in commerce if he is engaged in activities that constitute interstate commerce, not merely affect it." Thompson v. Robinson, Inc., No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *3 (M.D. Fla. Sept. 17, 2007) (citing Thorne v. All Restoration Servs., Inc., 448 F.3d 1264, 1266 (11th Cir. 2006)).  "An employee must 'directly participat[e] in the actual movement of persons or things in interstate commerce by (i) working for an instrumentality of interstate commerce, . . . or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel.'" Id. (citing Thorne, 448 F.3d at 1266).  "Goods cease to move in interstate commerce once they reach the customer for whom they are intended." Id. (citing Thorne, 448 F.3d at 1267).  Thus, an employer who "purchases goods that previously moved in interstate commerce for intrastate use" or an employee who "engage[s] in any further intrastate movement of the goods [is] not covered under the Act." Id.  See also Leon v. Tapas & Tintos, Inc., 51 F. Supp. 3d 1290, 1294 (S.D. Fla. 2014).

7

The Court finds that Plaintiff has failed to plausibly allege individual coverage. Although Plaintiff alleges that she "worked as a wait-staff worker at all three restaurants operated by the Defendants[,]" (id. ¶ 5), and was "individually engaged in commerce because [she was] employed in a manner which required that [she] regularly use the implements of interstate commerce and directly interacted and served customers of the restaurants who traveled from other states and countries, and also by nature of the work Plaintiff performed[,]" (id. ¶ 6), this is insufficient to establish individual coverage under the FLSA. See Martin v. Briceno, No. 11–23228–CIV, 2014 WL 2587484, at *3 (S.D. Fla. June 10, 2014) ("This court has previously determined that there is no 'individual coverage' under FLSA when a plaintiff works as a waiter/cashier and (a) processes credit and debit card purchase transactions; (b) serves food prepared with ingredients that had crossed state lines; (c) serves beverages produced out-of-state; and (d) serves customers from out of the state. . . . [W]aiters, servers, bartenders, and bus boys are not entitled to individual coverage because their duties involved processing credit card transactions and serving food and beverages.") (citing Joseph v. Nichell's Caribbean Cuisine, Inc., 862 F. Supp. 2d 1309, 1312-13 (S.D. Fla. 2012)); see also Amadon v. Delivery Dudes, LLC, CASE NO. 0:16-cv-62329-WPD (Dimitrouleas/Snow), 2017 WL 7792707, at *3 (S.D. Fla. Mar. 3, 2017) ("Handling goods or materials, in this case food, that have previously traveled in interstate commerce does not constitute engaging in interstate commerce for purposes of individual coverage under the FLSA.") (citing Thorne, 448 F.3d at 1267); Joseph, 862 F. Supp. 2d at 1314 ("[W]hether the customers Plaintiff served at Defendant's restaurant were local or from out-of-state is immaterial to establishing individual FLSA

8

coverage.") (citing Jacobs v. Dolanlil, Inc., No. 6:08–cv–02071–Orl–22GJK, 2010 WL 1730807, at *4 (M.D. Fla. Apr. 12, 2010); Dent v. Giaimo, 606 F. Supp. 2d 1357, 1361 (S.D. Fla. 2009)).  Because the Complaint does not state facts regarding how Plaintiff regularly and directly participated in the actual movement of things or persons in interstate commerce, the Court finds that she failed to plausibly allege individual coverage under the FLSA.

### 2. Enterprise coverage

"For 'enterprise coverage' to apply, the enterprise must have (1) employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and (2) annual gross volume of sales made or business done is not less than $500,000." Leon, 51 F. Supp. 3d at 1294 (citing 29 U.S.C. § 203(s)).  "For enterprise coverage, 'the goods must have moved in commerce at some time; they do not have to be currently moving in commerce.'" Id. (quoting Thompson, 2007 WL 2714091, at *3).  "Moreover, Congress's addition in 1974 of the words 'or materials' to the statute expanded the number of employers subject to the Act." Id. at 1294-95 (citing Polycarpe v. E & S Landscaping Service, Inc., 616 F.3d 1217, 1224 (11th Cir.2010) (interpreting "materials" as "tools or other articles necessary for doing or making something" for commercial purposes)).

The Court finds that the Complaint plausibly alleges enterprise coverage under the FLSA.  Construing the Complaint's factual allegations as true and drawing all reasonable inferences in Plaintiff's favor, it is reasonable to infer that (1) goods or materials used in

9

Defendants' restaurants moved in interstate commerce before they were delivered to the restaurants, or (2) that the goods or materials handled by Plaintiff in her duties were "necessary for doing or making something" for the restaurant's commercial purposes. Id. at 1295; see also Thompson v. Robinson, No. 6:06-cv-771-Orl-19JGG, 2007 WL 2714091, at *3 (M.D. Fla. Sept. 17, 2007) ("It is a reasonable inference to assume that some of the goods used in the Restaurant moved in interstate commerce before they were delivered to the Restaurant by local vendors."). Consequently, the Court finds that the Complaint plausibly alleges FLSA coverage.

### b. Operational control

Defendants argue that the Complaint fails to properly allege that Domanti had "operational control" over the restaurants such that he qualifies as Plaintiff's "employer" under the FLSA. (Mot. at 10-11.)

The FLSA creates a private right of action against any "employer" who violates its minimum-wage or overtime provisions. 29 U.S.C. § 216(b). The Act defines the term "employer" broadly to include "both the employer for whom the employee directly works as well as 'any person acting directly or indirectly in the interests of an employer in relation to an employee.'" Josendis, 662 F.3d at 1298 (11th Cir. 2011) (quoting 29 U.S.C. § 203(d)). Pursuant to this broad definition, the Eleventh Circuit has held that "'a corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages.'" Lamonica v. Safe Hurricane Shutters, Inc., 711 F.3d 1299, 1309 (11th Cir. 2013) (quoting Patel v. Wargo, 803 F.2d 632, 637-38 (11th Cir. 1986) (quoting Donovan v. Agnew, 712

F.2d 1509, 1511 (1st Cir. 1983))).  Corporate supervisors other than officers may be personally liable under the FLSA if they have "control over 'significant aspects of [the company's] day-to-day functions, including compensation of employees or other matters in relation to an employee.'"  Id. at 1314 (quoting Alvarez-Perez v. Sanford-Orlando Kennel Club, Inc., 515 F.3d 1150, 1160 (11th Cir. 2013)).

> "In determining whether a party is an employer, courts have long assessed the economic reality of the relationship between the employee and the alleged employer." Baltzley v. Berkley Group, Inc., 2010 WL 3505104, at *3 (S.D. Fla. Sept. 3, 2010) (Altonaga, J.).  "The economic reality test suggests an employee-employer relationship may exist where the alleged employer hires and fires employees, supervises and controls employee work schedules or conditions of employment, determines the rate and method of payment, or maintains employment records." Id. "Whether an individual falls within this definition does not depend on technical or isolated factors but rather on the circumstances of the whole activity." Alvarez Perez v. Sanford–Orlando Kennel Club, Inc., 515 F.3d 1150, 1161 (11th Cir. 2008).

Ceant v. Aventura Limousine & Transp. Serv., Inc., 874 F. Supp. 2d 1373, 1381 (S.D. Fla. 2012).

"The definition of 'employer' under the FMWA is the same as under the FLSA." Belnavis v. Estate of Edwards, Case No. 8:13-cv-2580-T-24 MAP, 2014 WL 12618199, at *5 (M.D. Fla. Mar. 6, 2014) (citing Fla. Stat. § 448.109(1)(a)); see also Morales v. Aventura's Finest Carwash and Serv. at the Mall, Inc., CASE NO. 15-21821-CIV-KMW, 2016 WL 11257423, at *3 (S.D. Fla. June 22, 2016); cf. Barrios v. Solasi, Case Number: 17-20186-CIV-MARTINEZ-GOODMAN, 2019 WL 5566344, at *2-3 (S.D. Fla. Oct. 9, 2019) (analyzing whether individual was the plaintiff's employer under the FLSA/FMWA); Goetz v. Louie's Backyard, Inc., CASE NO. 14-10074-CIV-KING, 2015 WL 12781194, *1-2 (S.D. Fla. May 18, 2015) (same).

>Here, the Complaint alleges
>
>Defendant Spizzigo Enterprises, L.L.C., and Defendant L'angolo 107 Investments LLC are related Florida limited liability companies which together operate at least three restaurants and bars in South Florida as a single jointly organized conglomerate using the same or similar names. See https://www.spizzigo.com.  Both entities are owned and/or controlled, directly or indirectly by Defendant Salvatore Domanti.

(Compl. ¶ 3.)

The Court finds that the Complaint fails to allege sufficient facts regarding Domanti's operational control over the restaurants to plausibly allege that Domanti qualifies as Plaintiff's employer under the FLSA (and, therefore, under the FMWA). To be sure, courts in this District have not traditionally required detailed factual allegations regarding an individual defendant's operational control over a business. For example, in <u>Palmondon v. Straticon, LLC</u>, Judge Moreno found that the complaint had adequately alleged operational control where it alleged that "Defendant [Hardin] had operational control of the business and thus is jointly liable for Plaintiff's damages." Case Number: 17-22647-CIV-MORENO, 2017 WL 4326102, at *1 (S.D. Fla. Sept. 26, 2017). The Court takes no position as to whether it agrees with the finding in <u>Palmondon</u>, but even if it did, Plaintiff has not even alleged that Domanti had <u>operational</u> control over the <u>restaurants</u>. She merely alleges that Spizzigo and L'angolo operate three restaurants and bars, and that Domanti owns and/or controls Spizzigo and L'angolo. (Compl. ¶ 3.) The Court finds this insufficient to state a claim under the FLSA (and, therefore, the FMWA) against Domanti.

Accordingly, the Complaint is dismissed without prejudice as to Domanti.

### c. Vague and contradictory claims

Defendant argues that some of Plaintiffs allegations are vague and contradictory. (Mot. at 9-10.) For example, in Count I "Plaintiff alleges that she is not a tipped employee within the meaning of the FLSA. However, the Complaint also alleges that Plaintiff worked as hourly wait staff in a restaurant (a traditionally tipped position) and that Defendants were taking tips or otherwise using tips for improper purposes." (Id. (citing Compl. ¶¶ 12, 16).) "Similarly, in Count II, Plaintiff alleges, on one hand, that Defendants failed to pay overtime and, on the other, paid overtime at the incorrect rate." (Id. (citing Compl. ¶ 22).) Plaintiff does not respond to this argument.

Defendant is correct that these claims are contradictory and confusing. Count I alleges that Plaintiff was an "hourly wage wait-staff employee[]" who was not a "tipped employee[] within the meaning of the FLSA §3(m)[,]" (id. ¶¶ 12, 16); Count I then states that Defendant took "possession of Plaintiff's tips without also taking a 'tip credit[.]'" (Id. ¶ 16.) Count II alleges on the one hand that "the Employer failed pay overtime hours at all[,]" and on the other hand that "the Employer paid hours in excess of forty in an applicable workweek at the same below minimum wage rate of pay or 'straight time' rate of pay[.]" (Id. at 22.)

Although a plaintiff is permitted to plead claims in the alternative, Fed. R. Civ. P. 8(d), Plaintiff does not indicate that she is asserting alternative theories of relief. The Court find that the claims are contradictory, and, as such, Counts I and II fail to state claim that are plausible on their face. See Hernandez v. Integon Nat'l Ins. Co., Case No. 20-cv-23371-BLOOM/Louis, 2020 WL 6581610, at *5 (S.D. Fla. Nov. 10, 2020) (finding that

the complaint was, inter alia, "replete with contradictory allegations[,]" and failed to state a claim that was plausible on its face); Smith v. Dekalb Cnty. Jail, No. 1:13–cv–1629–WSD, 2014 WL 129509, at *2 (N.D. Ga. Jan. 14, 2014) (finding that contradictory allegations failed to plausibly allege a claim). Accordingly, the Court finds that Counts I and II should be dismissed without prejudice with leave to replead to clarify these allegations.

### d.  Shotgun pleading

Defendants argue that the Complaint is an improper "shotgun pleading" for two separate reasons: (1) Count III fails to separate different causes of action into separate counts, and (2) the Complaint "asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." (Id. at 6-8.) Plaintiff does not directly respond to these arguments.

The Eleventh Circuit has identified at least four types of shotgun pleadings, including: (1) a complaint that fails to separate "into a different count each cause of action or claim for relief[,]" Weiland v. Palm Beach Cnty. Sheriff's Office, 792 F.3d 1313, 1323 (11th Cir. 2015); and (2) a complaint that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Id.

> Shotgun pleadings violate Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), by "fail[ing] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests."

Vibe Micro, Inc. v. Shabanets, 878 F.3d 1291, 1294-95 (11th Cir. 2018) (quoting Weiland, 792 F.3d at 1323). "Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." Id. at 1295 (citation omitted). "They waste scarce judicial resources, 'inexorably broaden[] the scope of discovery,' 'wreak havoc on appellate court dockets," and 'undermine[] the public's respect for the courts.'" Id. (quoting Davis v. Coca-Cola Bottling Co. Consol., 516 F.3d 955, 979-80 & n.54 (11th Cir. 2008)). When faced with a shotgun pleading, "the district court 'should strike the complaint and instruct counsel to replead the case[.]'" Id. (quoting Byrne v. Nezhat, 261 F.3d 1075, 1133 (11th Cir. 2001) (quoting Cramer v. Florida, 117 F.3d 1258, 1263 (11th Cir. 1997))).

### 1. Multiple defendants

First, the Court finds that the Complaint does not constitute the type of shotgun pleading that asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." Weiland, 792 F.3d at 1323 (citations omitted). As other courts have observed, Weiland does not "prohibit all instances where a count lodges a claim against multiple defendants, but rather only where such a claim fails to provide Defendants with adequate notice of the claims against them." Cont'l 332 Fund v. Albertelli, 317 F. Supp. 3d 1124, 1140 (M.D. Fla. 2018); see also Whitehurst v. G & A Rest. Mgmt., Inc., Case No.: 2:20-cv-67-FtM-60MRM, 2020 WL 2062462, at *2 (M.D. Fla. Apr. 29, 2020).

Here, the Complaint gives adequate notice of the claims against each Defendant. This is not a case where the Defendants are alleged to be wholly distinct and unrelated parties. Rather, the Complaint alleges that Spizzigo and L'angolo "are related Florida limited liability companies which <u>together operate at least three restaurants and bars in South Florida as a single jointly organized conglomerate</u> using the same or similar names." (Compl. ¶ 3 (emphasis added).) "Both entities are owned and/or controlled, directly or indirectly by Defendant Salvatore Domanti." (<u>Id.</u>) The Complaint further alleges that Spizzigo, L'angolo, and Domanit "are each, <u>individually, and together as group</u>, a 'person' and 'employer' within the meanings provided by 29 U.S.C. §203(a) and (d). <u>Defendants are referred to herein jointly as 'Employer'</u>." (<u>Id.</u> ¶ 6.) Thus, it is clear from the Complaint that Plaintiff is alleging that the three Defendants, "individually, and together as a group," are responsible for each of the alleged acts and omissions. (<u>See id.</u>; <u>see also id.</u> ¶ 11 ("The Employer is a conglomerate of related persons or entities engaged in the business of operating restaurants.").) Indeed, there are no specific allegations in the Complaint that would appear to apply to fewer than all three Defendants. (<u>See. e.g.</u>, <u>id.</u> ¶ 15 ("The Employer failed to timely pay wages to Plaintiff . . . ."); <u>id.</u> ¶ 16 ("The Employer is not entitled to any so-called "tip credit" toward the applicable minimum wage rate of pay . . . ."); <u>id.</u> ¶ 22 ("The Employer failed to pay overtime compensation to Plaintiff . . . .").) Consequently, the Court finds that the Complaint does not constitute an impermissible shotgun pleading for alleging multiple claims against multiple defendants without specificity. See <u>Whitehurst</u>, 2020 WL 2062462, at *2; <u>Cont'l 332 Fund</u>, 317 F. Supp. 3d at 1140.

### 2. Multiple claims

The Court finds that Count III constitutes a shotgun pleading because it asserts multiple claims for relief in a single cause of action. Specifically, Count III—which is titled "Breach of Agreement to Pay Wages and for Unpaid Wages"—appears to allege claims for breach of contract, for failure to pay minimum wages under the FMWA, and for failure to pay minimum wages under § 24, Art. X of the Florida Constitution. (Compl. ¶ 26 (alleging that Defendants "breached the agreement" to pay Plaintiff wages "by failing to pay minimum hourly wages, and overtime wages as agreed and required by law, including §448.110(6), Florida Statutes, and § 24, Art. X of the Florida Constitution").)[3] Although it appears to be an unsettled question of law whether minimum wage claims under Section 448.110(6), Florida Statutes, and minimum wage claims under Section 24, Article X of the Florida Constitution are, in fact, separate causes of action, see, e.g., Montes v. M & M Mgmt. Co., No. 15–80142–CIV, 2015 WL 4077463, at *2-3 (S.D. Fla. July 6, 2015) (discussing split of authority), it also appears that the primary difference between the two claims (if there is one) is that the FMWA requires pre-suit notice while the constitutional claim does not. See id. Here, it is undisputed that Plaintiff provided pre-suit notice to Defendants, (see D.E. 19, 20; see also Note 2, supra), so the Court will permit the FMWA and constitutional claims to be pled as a single cause of action. See Montes, 2015

---

[3] The Court has found no authority holding that the Florida Minimum Wage Act creates a cause of action for unpaid overtime wages. See Santiago v. ACA Camp Geneva, Inc., Case No: 5:17–cv–124–Oc–30PRL, 2017 WL 2578710, at *3 (M.D. Fla. June 14, 2017) ("[I]t is unclear to the Court that Plaintiff's claim for unpaid overtime is appropriately brought under the FMWA, which provides a cause of action for unpaid minimum wages.").

WL 4077463, at *3 (dismissing claim asserting unpaid minimum wages under only § 24, Art. X of the Florida Constitution and instructing the plaintiff to replead it under the FMWA).

However, because Count III appears to assert a claim for breach of contract <u>in addition to</u> the state law unpaid minimum wage claim, it constitutes an impermissible shotgun pleading and must be replead. See <u>Vibe Micro</u>, 878 F.3d at 1296 ("When a litigant files a shotgun pleading, is represented by counsel, and fails to request leave to amend, a district court must sua sponte give him one chance to replead before dismissing his case with prejudice on non-merits shotgun pleading grounds.").[4]

## IV. Conclusion

Accordingly, it is **ORDERED AND ADJUDGED** that:

1. Defendants' Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for More Definite Statement (D.E. 10) is **GRANTED IN PART** consistent with this Order;

2. Plaintiff's Complaint is **DISMISSED WITHOUT PREJUDICE**; and

---

[4] Because the Court finds that Count III constitutes an impermissible shotgun pleading which must be replead, the Court need not address Defendants' argument that the FLSA preempts Count III. However, in an attempt to streamline the proceedings, the Court finds that to the extent that Count III seeks to state an unpaid wage claim under the FMWA, it would not be preempted by the FLSA. <u>Calderone v. Scott</u>, 838 F.3d 1101, 1105 (11th Cir. 2016) (holding that the FLSA did not preempt a class action under FMWA); <u>see also</u> <u>Overnite Transp. Co. v. Tianti</u>, 926 F.2d 220, 222 (2d Cir. 1991) (holding that the FLSA does not preempt state law overtime wage claims, and noting that "every Circuit that has considered the issue has reached the same conclusion—state overtime wage law is not preempted by . . . the FLSA").

3. Plaintiff shall have fourteen days from the date of this Order to file an Amended Complaint to cure all deficiencies.

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of February, 2021.

**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**